**O**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSEANNE AGUILAR,<br><br>                Plaintiff,<br><br>     v.<br><br>CITY OF SOUTH GATE and DOES 1-50,<br>inclusive,<br><br>                Defendants. | Case No. 2:12-CV-10669-ODW (PLA)<br><br>**ORDER DENYING DEFENDANT CITY OF SOUTH GATE'S MOTION TO DISMISS [17]** |

## I.     INTRODUCTION

Christopher Coronel was allegedly shot to death by South Gate police officers on May 25, 2011.  In response to his passing, his mother, Plaintiff Roseanne Aguilar, brought this action alleging violations of 42 U.S.C. § 1983 and California's Tom Bane Civil Rights Act, Cal. Civ. Code § 52.1.  The City moves to dismiss the Complaint under Rule 12(b)(6), arguing three different pleading-sufficiency and interpretational grounds.  After considering each of these bases and the parties' respective arguments, the Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.  For the reasons discussed below, the Court **DENIES** the City's Motion in its entirety.

/ / /

/ / /

## II.   FACTUAL BACKGROUND

This case arises out of an encounter between South Gate police officers and Coronel, Aguilar's son, on May 25, 2011.  (Compl. ¶ 8.)  Aguilar alleges that South Gate police were called to Coronel's home because of reports that he was possibly going to commit suicide.  (*Id.*)  Police were purportedly informed that Coronel was very "despondent" and "agitated" and that he suffered from serious mental and emotional problems.  (Compl. ¶ 9.)  Despite this information, Aguilar contends that police arrived in an aggressive and confrontational manner, threatening to seize Coronel as they aggressively stormed into his house.  (*Id.*)  Coronel reacted by fleeing from the house, and police gave chase.  (*Id.*)  Though he did not threaten anyone, Coronel was cornered in a small courtyard behind a home down the street.  (*Id.*)  At that time, police allegedly assaulted and battered Coronel and shot him 15 times in his front and back, resulting in his death.  (*Id.*)

Following her son's death, Aguilar asserts that South Gate police covered up the shooting and failed to discipline the officers involved.  (*Id.*)  She alleges that "this incident is representative of police officers who were not adequately prepared nor trained to deal with this situation particularly involving an acutely distressed person with clear mental health and or intoxication issues, including a possible threat of self injury or suicide." (Compl. ¶ 10.)  Further, she contends that the officers' use of force was unjustified, unreasonable, and excessive.  (Compl. ¶ 12.)

Aguilar, as the mother and sole heir of Coronel, filed a Complaint in Los Angeles Superior Court against the City of South Gate on November 5, 2012, alleging causes of action for wrongful death; negligence; assault and battery; violation of the Bane Act, Cal. Civ. Code § 52.1; and violation of civil rights, 42 U.S.C. § 1983. (ECF No. 1, Ex. A.)  The City removed the case to this Court.  On December 20,

/ / /

/ / /

/ / /

2012, the City filed this Motion to Dismiss under Rule 12(b)(6).   (ECF No. 7.) That Motion is now before the Court for decision.[1]

### III.   LEGAL STANDARD

Dismissal under Rule 12(b)(6) can be based on "the lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).   A complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement—to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6).   *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003); Fed. R. Civ. P. 8(a)(2).   For a complaint to sufficiently state a claim, its "[f]actual allegations must be enough to raise a right to relief above the speculative level."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   While specific facts are not necessary so long as the complaint gives the defendant fair notice of the claim and the grounds upon which the claim rests, a complaint must nevertheless "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Iqbal*'s plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," but does not go so far as to impose a "probability requirement."   *Id.*   Rule 8 demands more than a complaint that is merely consistent with a defendant's liability—labels and conclusions, or formulaic recitals of the elements of a cause of action do not suffice.   *Id.*   Instead, the complaint must allege sufficient underlying facts to provide fair notice and enable the defendant to defend itself effectively.   *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).   The

---

[1] The Court reminds both sides' attorneys that they are bound to comply with the Central District Local Rules in formatting their written submissions to the Court.   The formatting of Plaintiff's Opposition violates Local Rules 11-3.2 and 11-3.6, which both require, among other things, that all text—including block quotes, but not including footnotes—be double spaced.   Further, both Plaintiff and Defendant (in its Reply) failed to comply with Local Rule 11-8, which requires that any memorandum of points and authorities over 10 pages include tables of contents and authorities.   Failure to comport with the Local Rules in the future may subject the parties to sanctions at the Court's discretion under Local Rule 83-7.

1   determination whether a complaint satisfies the plausibility standard is a "context-

2   specific task that requires the reviewing court to draw on its judicial experience and

3   common sense." *Iqbal*, 556 U.S. at 679.

4         When considering a Rule 12(b)(6) motion, a court is generally limited to the

5   pleadings and must construe "[a]ll factual allegations set forth in the complaint . . . as

6   true and . . . in the light most favorable to [the plaintiff]." *Lee v. City of L.A.*, 250 F.3d

7   668, 688 (9th Cir. 2001).  Conclusory allegations, unwarranted deductions of fact, and

8   unreasonable inferences need not be blindly accepted as true by the court.  *Sprewell v.*

9   *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  Yet, a complaint should be

10  dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts"

11  supporting plaintiff's claim for relief.  *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir.

12  1999).

13                          **IV.   DISCUSSION**

14        The City of South Gate moves to dismiss Aguilar's Complaint for failure to

15  state a claim on the grounds that (1) Aguilar has not pled sufficient facts to establish

16  *Monell* liability against the City; (2) a city is not a "person" that can be sued under the

17  Tom Bane Civil Rights Act; and (3) even assuming the City can be sued under the

18  Bane Act, Aguilar did not adequately establish the necessary "threats, intimidation, or

19  coercion" required by the California Civil Code section 52.1(a).   In opposition,

20  Aguilar contends she appropriately established both her failure-to-train and Tom Bane

21  Act claims against the City.  The Court considers each of these bases and the parties'

22  respective arguments in turn.

23  **A.   *Monell* Liability**

24        Aguilar's fifth claim alleges a vicarious-liability claim against the City under 42

25  U.S.C. § 1983 and *Monell v. New York City Department of Social Services*, 436 U.S.

26  658 (1978).  (Compl. ¶¶ 42–52.)

27  / / /

28

Section 1983 allows for a civil action against any person who, under color of law, causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. While the statute does not define "person" or address whether a governmental unit may be sued under its provisions, the United States Supreme Court in *Monell* held that a local government may be sued under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." 436 U.S. at 694. However, a governmental unit may not be liable under § 1983 simply based on a "*respondeat superior* theory." *Id.* at 691.

To hold a municipality liable for the actions of its officers and employees, a plaintiff must allege one of the following: "(1) that a [municipal] employee was acting pursuant to an expressly adopted official policy; (2) that a [municipal] employee was acting pursuant to a longstanding practice or custom; or (3) that a [municipal] employee was acting as a 'final policymaker.'" *Lytle v. Carl,* 382 F.3d 978, 982 (9th Cir. 2004). Additionally, under some circumstances a municipality can be held liable for failure to train its police officers. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

Aguilar alleges all possible grounds of *Monell* liability against the City in her Complaint. (Compl. ¶ 13.) They include inadequate training, negligent hiring, and encouragement of constitutional violations. (*Id.*) Viewing Aguilar's allegations against the entirety of the Complaint, the Court finds that all *Monell* allegations except her failure-to-train claim are too conclusory and therefore foreclosed. However, the facts Aguilar alleges to support her failure-to-train claim are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp.*, 550 U.S. at 555.

In *City of Canton*, the Supreme Court expanded upon *Monell* and allowed failure-to-train claims against municipalities in certain circumstances. 489 U.S. at 388. Such a claim only lies "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.*

1  The Court hypothecated that it is possible that the need for training certain officers or
2  employees could be "so obvious" given the duties assigned to them that failure to train
3  them could constitute deliberate indifference on the part of the city's policymakers.
4  *Id.* at 390. The Court specifically identified deadly force as one such area that might
5  be "so obvious." *Id.* at 390 n.10.

6  The Ninth Circuit explained that there are three elements a plaintiff must satisfy
7  under *Canton*: "(1) he was deprived of a constitutional right, (2) the City had a
8  training policy that amounts to deliberate indifference to the [constitutional] rights of
9  the persons with whom [its police officers] are likely to come into contact; and (3) his
10  constitutional injury would have been avoided had the City properly trained those
11  officers." *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007) (internal
12  quotation marks omitted).

13  In attacking Aguilar's failure-to-train claim, the City analogizes to *Dougherty v.*
14  *City of Covina*, a case in which the Ninth Circuit upheld dismissal of a plaintiff's
15  complaint that "lacked any factual allegations regarding key elements of the *Monell*
16  claims" and simply relied upon conclusory statements of liability. 654 F.3d 892, 900–
17  01 (9th Cir. 2011). The City points to paragraph 13 of Aguilar's Complaint and
18  claims she only provided "legal conclusions devoid of any facts" that would support
19  her assertion that the City "faile[ed] to provide adequate training and supervision to
20  police officers with respect to constitutional limits on the use of deadly force." (Mot.
21  4 (emphasis omitted); Reply 12; *see also* Compl. ¶ 13.) She should have identified
22  some past incidents, claims the City, to support her allegation, but she did not. (Mot.
23  4; Reply 11 ("[A] pattern of similar constitutional violations by untrained employees
24  is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to
25  train." (internal quotation marks omitted) (citing *Connick v. Thompson*, 131 S. Ct.
26  1350 (2011)).)

27  Aguilar contends that the City jumped over the facts she set out in paragraphs 9
28  through 12 of her Complaint, which explain what supposedly transpired on the day

Coronel died.  (Opp'n 11–12; *see also* Compl. ¶¶ 9–12.)  She asserts that "[t]hese facts are not conclusory, boilerplate allegations," as the City accuses her of alleging. (Opp'n 11 (emphasis omitted)).  In addition, Aguilar relies on *City of Canton* for the proposition that one federal-rights violation alone can potentially trigger *Monell* liability.  489 U.S. at 390 n.10.

The Court finds that Aguilar alleged sufficient facts to establish a failure-to-train claim against the City.  Aguilar sets forth her version of the events that gave rise to her son's death on May 25, 2011, in paragraphs 8 through 12.  According to the Complaint, Coronel was killed after the City's police officers shot him 15 times in the front and back.  Coronel's right to bodily integrity and to be free of unreasonable searches and seizures is indeed protected by the United States Constitution.  *Planned Parenthood of Se. Penn. v. Casey*, 505 U.S. 833, 915 (1992); U.S. Const., amends. IV, XIV.

Notably, Aguilar contends "that this incident is representative of police officers who were not adequately prepared nor trained to deal with this situation particularly involving an acutely distressed person with clear mental health and or intoxication issues, including a possible threat of self injury or suicide."  (*Id.* ¶ 10.)  The use of deadly force in such a situation may well give rise to an "obvious" need for training in the City of South Gate on the constitutional limits of such force.  *City of Canton*, 489 U.S. at 390 & n.10.  Finally, Aguilar does allege a causal connection between the officers' actions and her son's death (Compl. ¶ 47), a prerequisite to liability. *Blankenhorn*, 485 F.3d at 484.

To the extent that the City relies on *Dougherty*, that case is distinguishable from this one.  In *Dougherty*, the Ninth Circuit held dismissal was appropriate when the plaintiff alleged simply "(1) 'Defendant CITY's policies and/or customs caused the specific violations of Plaintiff's constitutional rights at issue in this case[ ]' and (2) 'Defendant CITY's polices and/or customs were the moving force and/or affirmative link behind the violation of the Plaintiff's constitutional rights and injury, damage

1    and/or harm caused thereby.'"  654 F.3d at 900.  Aguilar's Complaint, though not a

2    cornucopia of facts, contains much more than that held insufficient in *Dougherty*.

3    (*See* Compl. ¶¶ 8–12.)  Additionally, absolute pleading perfection on a failure-to-train

4    claim can hardly be expected of a plaintiff who has yet to benefit from discovery.

5         Finally, the Supreme Court's decision in *Connick* is not germane to the

6    resolution of this Motion.  There, the Court specifically distinguished between the

7    hypothetical armed police officers contemplated by the Court in *Canton* and the

8    attorneys trained in the law in *Connick*.  131 S. Ct. at 1361–62.  The former could

9    potentially fall within the "narrow range of circumstances" left open by *Canton*, *see*

10   *Bd. of Cnty. Com'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 398 (1997), whereas

11   the latter could not.  131 S. Ct. at 1361.  The City cannot seriously contend that its

12   police officers are like the skilled lawyers in *Connick*, so consequently that decision

13   does little to shed light on the appropriate resolution of the this Motion.

14        Therefore, the Court **DENIES** Defendant's Motion to Dismiss with respect to

15   Aguilar's *Monell* failure-to-train claim.

16   **B.    Tom Bane Civil Rights Act**

17        The City also moves to dismiss Aguilar's Complaint on the grounds that a city

18   is not a "person" that can be sued under the Tom Bane Act.  Alternatively, if a city can

19   be sued, she did not sufficiently allege that the City acted with any "threats,

20   intimidation, or coercion" as required by the Act.  (Mot. 4–10); Cal. Civ. Code § 52.1.

21        *1.    A City as a "Person" under Section 52.1*

22        First, the City contends that since the Tom Bane Act does not define who a

23   "person" is under its provisions, *see* § 52.1(a), one must resort to the general

24   definitions section of the California Civil Code, that is, section 14.  (Mot. 4–6.)  That

25   section provides that "the word person includes a corporation as well as a natural

26   person; county includes city and county."  Cal. Civ. Code § 14.  Since the Act

27   does not include the word "county," argues the City, the Legislature must not have

28   / / /

1  intended a city to be sued.  (Mot. 5; Reply 8–9.)  And if a city can be sued under the
2  act, it is only under a *respondeat superior* theory.[2]  (Reply 1–2.)

3        Additionally, the City cites *State ex rel. Harris v. PricewaterhouseCoopers,*
4  *LLP* in which the California Supreme Court noted that the Legislature knows how to
5  include public entities in the definition of "persons" when it wants to do so.  39 Cal.
6  4th 1220, 1229 (2006); (Mot. 6.)  The City contends that since the Legislature
7  amended section 14 in 1874 and removed "bodies politic or corporate" from the
8  definition of "person," it must have intended to take public entities completely out of
9  the definition of "person" going forward.  (Mot. 6–7.)  Lastly, the City cites to a
10  Massachusetts case where the court found that public entities were not included in the
11  definition of "person" under the Massachusetts Civil Rights Act.  *Howcroft v. City of*
12  *Peabody*, 51 Mass. App. Ct. 573, 592 (2001); (Mot. 7 (citing *Jones v. Kmart, Corp.*,
13  17 Cal. 4th 329 (1998), for the proposition that the Tom Bane Act was modeled after
14  its Massachusetts counterpart and thus Massachusetts cases are instructive in
15  interpreting the Act); Reply 7–8.)

16        Aguilar, on the other hand, contends that since no court has squarely confronted
17  this interpretational issue, that silence shows that it is assumed that cities can be sued
18  under the Act.  (Opp'n 3.)  Further, she argues that the City misread *Jones*, and the
19  California Supreme Court really intended to distance itself from Massachusetts law.
20  (*Id.*)  She asserts that the cases against public entities under the Act are "legion"
21  (Opp'n 3–4), and that *PricewaterhouseCoopers* is a "very distant case" from hers
22  because the court performed substantial research into the legislative history of the
23  statute at issue there.  (*Id.* at 5–6.)

24        The Tom Bane Act, among other things, provides a plaintiff with a private
25  cause of action if,

26

27  ---

[2] The City spends several pages pointing out that many of the Plaintiff's cited cases arise under the
Unruh Civil Rights Act, Cal. Civ. Code §§ 51, 52, as opposed to the Tom Bane Act.  (Reply 1–4.)
28  The Court is aware of the distinction, and, in the interest of judicial economy, need not recite every
one here.

1    [A] *person* or *persons*, whether or not acting under color of law,

2    interferes by threats, intimidation, or coercion, or attempts to interfere by

3    threats, intimidation, or coercion, with the exercise or enjoyment by any

4    individual or individuals of rights secured by the Constitution or laws of

5    the United States, or of the rights secured by the Constitution or laws of

6    this state . . . .

7   Cal. Civ. Code § 52.1(a), (b) (emphasis added).  Suing a public entity potentially

8   triggers an issue of sovereign immunity.  U.S. Const., amend XI.  In cases were a

9   statute is silent on its face whether a public entity may be included in the definition of

10  "person," the California Supreme Court has espoused a rule of construction in which a

11  court must determine whether inclusion of governmental agencies in the definition

12  "would result in an infringement upon sovereign governmental powers."  *City of L.A.*

13  *v. City of San Fernando*, 14 Cal. 3d 199, 276–77 (1975), *disapproved of on other*

14  *grounds*, *City of Barstow v. Mojave Water Agency*, 23 Cal. 4th 1224 (2000).  Where

15  no infringement upon sovereign power would result, a public entity may properly be

16  included in the definition of "person."  *Id.*

17      The Court first looks to the more specific rule of construction addressing the

18  issue of infringement upon state sovereignty, rather than beginning with any general

19  rules of construction.  While the California Legislature did not expressly define the

20  term "person or persons" in section 52.1, at least one court has implicitly recognized

21  that section 52.1 is indeed a waiver of sovereign immunity.  *Rodriguez v. Cal.*

22  *Highway Patrol*, 89 F. Supp. 2d 1131, 1143 n.8 (N.D. Cal. 2000).  Further, even

23  cursory research into Bane Act jurisprudence reveals myriad cases pled directly

24  against cities. *See, e.g.*, *Smith v. City of Santa Clara*, No. 5:11-CV-03999-LHK, 2013

25  WL 164191 (N.D. Cal. Jan. 15, 2013); *Kerkeles v. City of San Jose*, 199 Cal. App. 4th

26  1001 (2011); *Barra v. City of Kerman*, No. 07CECG002419AMS, 2010 WL 2856843

27  (Cal. Ct. App. Jul. 22, 2010); *Gillan v. City of San Marino*, 147 Cal. App. 4th 1033

28  (2007); *City & Cnty. of San Francisco v. Ballard*, 136 Cal. App. 4th 381 (2006);

1     *Whitworth v. City of Sonoma*, No. SCV228962, 2004 WL 2106606 (Cal. Ct. App.

2     Sept. 22, 2004).

3         Second, even if one were to resort to the general definition of "person" under

4     section 14, an incorporated city such as the City of South Gate is in fact a

5     "corporation," albeit a municipal one. *Div. of Labor Law Enforcement v. El Camino*

6     *Hosp. Dist.*, 8 Cal. App. 3d Supp. 30, 34 (App. Dep't Super. Ct. 1970); Cal. Gov't

7     Code §§ 20, 56023.  The City would then, contrary to the City's arguments, fall under

8     the term "person."  What's more, the California Supreme Court previously found that

9     including municipal corporations within the definition of the general word "person" in

10    the Government Code did not infringe upon "sovereign governmental powers." *L.A.*

11    *Unified Sch. Dist. v. Superior Court*, 151 Cal. App. 4th 759 (2007); Cal. Gov't Code

12    § 6252(c) (defining "[p]erson").  That being the case, a city can be sued directly, and

13    not simply under a *respondeat superior* theory like the City contends.  (Reply 5–6.)

14         Additionally, the Court finds that *PricewaterhouseCooopers* is distinguishable

15    from this case.  There, the California Supreme Court was called upon to determine

16    whether the City and County of San Francisco were "person[s]" who could bring a *qui*

17    *tam* action under the California False Claims Act, Cal. Gov't Code § 12650 *et seq*.

18    *PricewaterhouseCoopers*, 39 Cal. 4th at 1223.  The statute had a very specific

19    definition of "person," namely, "any natural person, corporation, firm, association,

20    organization, partnership, limited liability company, business, or trust."  Cal. Gov't

21    Code § 12650(b)(5).  The court found it significant that not only did the California

22    Legislature specifically define "person," but the statute also made "very specific

23    reference to governmental entities." *Id.* at 1229 (internal quotation marks removed).

24    The Legislature did neither of those with the Tom Bane Act. *See* Cal. Civ. Code

25    §§ 51.7, 52.1.  Further, the City incorrectly notes that "the statute was subsequently

26    amended to delete public entities."  (Mot. 6.)  Rather, the Assembly Bill that was the

27    genesis of the False Claims Act was amended during the legislative process, not the

28    statute post-enactment. *PricewaterhouseCoopers, LLP*, 39 Cal. 4th at 1230.

1    Lastly, Aguilar correctly notes that the City misread *Jones* and its references to
2  Massachusetts cases.  While the court in *Jones* did indicate that portions of the Tom
3  Bane Act were modeled after the Massachusetts Civil Rights Act, 17 Cal. 4th at 335,
4  after discussing some Massachusetts cases, the court "decline[d] to follow them in
5  applying California law."  *Id.* at 337.  Hence, this Court does too.

6    Accordingly, the Court finds that the City is a "person" within the meaning of
7  section 52.1 and **DENIES** Defendant's Motion to Dismiss with respect to this claim.

8    *2.    Allegations of Threats, Intimidation, or Coercion*

9    Lastly, the City argues that Aguilar has not pled sufficient facts to establish the
10  requisite "threats, intimidation, or coercion" for a Bane Act claim.  (Mot. 8–10.)  It
11  contends that she relies upon conclusions instead of facts, and, to the extent that she
12  claims officers threatened to seize her son, such a threat does not suffice to meet her
13  pleading obligations.  (*Id.* at 10.)  Further, the City cites *Shoyoye v. County of Los*
14  *Angeles*, 203 Cal. App. 4th 947, 959 (2012), for the requirement that the plaintiff
15  show coercion independent of the alleged constitutional violation, and *Gant v. County*
16  *of Los Angeles*, 765 F. Supp. 2d 1238, 1253–54 (C.D. Cal. 2011), for the holding that
17  "a wrongful arrest and detention, without more, cannot constitute 'force, intimidation,
18  or coercion' for purposes of section 52.1."

19    In response, Aguilar contends she did plead the necessary "threats, intimidation,
20  or coercion" by including the facts giving rise to her son's death.  (Opp'n 7–8; *see*
21  *also* Compl. ¶¶ 8–12.)  She also distinguishes *Shoyoye* and notes a split of authority
22  over whether a wrongful detention alone is coercive enough to satisfy section 52.1.
23  (Opp'n 8.)

24    The Tom Bane Act requires that a "person or persons" interfere with the
25  plaintiff's legally protected rights by "threats, intimidation, or coercion."  Cal. Civ.
26  Code § 52.1(a).  The Court of Appeal in *Shoyoye* concluded that "the statute was
27  intended to address only egregious interferences with constitutional rights, not just
28  any tort."  203 Cal. App. 4th at 959.  While some courts hold that coercion cannot

simply be inherent in the violation alleged, others do not.  *Compare id. and Gant*, 765 F. Supp. 2d at 1253–54, *with Gillan v. City of San Marino*, 147 Cal. App. 4th 1033, 1050–51 (2007), *and Cole v. Doe 1 thru 2 Officers of City of Emeryville Police Dept.*, 387 F. Supp. 2d 1084, 1103 (N.D. Cal. 2005).

Nevertheless, the Court need not wade into the thicket of cases on either side of the split because Aguilar has pled sufficient facts to establish the necessary "threats, intimidation, or coercion."  Accepting the facts in her Complaint as true, Aguilar has shown aggressive, hyped-up police officers acting with disregard for the fragile nature of a potentially-suicidal young man.  (Compl. ¶¶ 9–12.)  Indeed, it is difficult to imagine something more "coercive" than shooting someone to death 15 times in the front and back, especially if the person is not threatening the officers.  (*See id.* at ¶¶ 9–10.)  Coronel had a right to life and bodily integrity, and assuming the veracity of the facts in the Complaint, the City's police officers deprived him of those rights through excessive use of force.  (*Id.* ¶¶ 9–12.)  The resolution of this claim may well turn out differently once the City has a chance to put on its case.  But the issue here is whether Aguilar complied with her pleading obligations under Rule 8.  The Court finds that she did.

## V.  CONCLUSION

For the reasons discussed above, Defendants' Motion is **DENIED**.


**IT IS SO ORDERED.**


January 25, 2013

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**