**O**

1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10

11 ROSEANNE AGUILAR,

12              Plaintiff,

13      v.

CITY OF SOUTH GATE, EDWARD
14 BOLAR, MARCELO BEDETTI,
SANDRA DAHLIA, DAVID SCOTT,
15 ROBERT TAIT, and DOES 1-50,
inclusive,
16

17              Defendants.

Case  2:12-CV-10669-ODW (PLAx)

**ORDER DENYING DEFENDANT
OFFICERS DAVID SCOTT'S,
ROBERT TAIT'S, AND SANDRA
DAHLIA'S MOTION TO DISMISS
[39, 40, 41] AND DENYING MOTION
FOR SUMMARY JUDGMENT [56]**

18

## I.    INTRODUCTION

19          Christopher Coronel was shot to death by South Gate police officers on
20 May 25, 2011.  Coronel's mother, Plaintiff Roseanne Aguilar, brought this action
21 alleging wrongful death, negligence, assault and battery, and violations of 42 U.S.C.
22 § 1983 and California's Tom Bane Civil Rights Act, Cal. Civ. Code § 52.1.
23 Defendants David Scott, Robert Tait, and Sandra Dahlia—all South Gate police
24 officers who did not fire the fatal shots—move to dismiss the various claims under
25 Federal Rule of Civil Procedure 12(b)(6).  After considering the parties' respective
26 arguments, the Court deems the matter appropriate for decision without oral argument.
27 Fed. R. Civ. P. 78; L.R. 7–15.   For the reasons discussed below, the Court
28 **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion.

1

**FACTUAL BACKGROUND**

2      This case arises out of an encounter between South Gate police officers and

3 Coronel, Aguilar's son, on May 25, 2011.  (FAC ¶ 9.)  South Gate police came to

4 Coronel's home after he called 911 and made suicidal remarks.  (*Id.*)  Police were

5 purportedly informed that Coronel was very "despondent" and "agitated" and that he

6 suffered from serious mental and emotional problems.  (*Id.*)  Despite this information,

7 Aguilar contends that police arrived in an aggressive and confrontational manner,

8 targeting Coronel with a laser sight from a taser gun when he opened the front door

9 holding a knife he had apparently used on himself.  (FAC ¶¶ 9–10.)  Coronel reacted

10 by fleeing out the back door, and police gave chase.  (FAC ¶¶ 10–11.)  Though he did

11 not threaten anyone, Coronel was cornered in a small courtyard behind a home down

12 the street.  (FAC ¶ 11.)  At that time, Officer Tait attempted to hit Coronel with a taser

13 but missed.  (*Id.*)  Officer Dahlia then hit Coronel with several rounds from a bean-

14 bag shotgun.  (*Id.*)  According to the officers, Coronel was about 6 to 10 feet away

15 when he subsequently "lunged" forward with the knife.  (*Id.*)  Two officers collided

16 with each other and fell, at which point officers Bedetti and Bolar allegedly shot

17 Coronel 15 times.  The shots hit Coronel's front and back, resulting in his death.  (*Id.*)

18      Following her son's death, Aguilar asserts that South Gate police covered up

19 the shooting and failed to discipline the officers involved.  (FAC ¶ 12.)  She alleges

20 "this incident is representative of police officers who were not adequately prepared

21 nor trained to deal with this situation particularly involving an acutely distressed

22 person with clear mental health and or intoxication issues, including a possible threat

23 of self injury or suicide."  (FAC ¶ 13.)  Further, she contends that the officers' use of

24 force was unjustified, unreasonable, and excessive.  (FAC ¶ 15.)

25      Aguilar, as the mother and sole heir of Coronel, filed a Complaint in Los

26 Angeles Superior Court against the City of South Gate on November 5, 2012.  (ECF

27 No. 1, Ex. A.)  The City removed the case to this Court on federal-question grounds.

28 (*Id.*)  On May 10, 2013, Aguilar filed a First Amended Complaint, adding Officers

1   Edward Bolar, Marcelo Bedetti, Sandra Dahlia, David Scott, and Robert Tait to the

2   list of defendants.  (ECF No. 28.)  On May 29, 2013, Scott, Tait, and Dahlia each filed

3   Motions to Dismiss under Rule 12(b)(6).  (ECF Nos. 39, 40, 41.)  The Court now

4   decides these Motions together.

5                                    **II.   LEGAL STANDARD**

6          Dismissal under Rule 12(b)(6) can be based on "the lack of a cognizable legal

7   theory" or "the absence of sufficient facts alleged under a cognizable legal theory."

8   *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A complaint

9   need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short

10  and plain statement—to survive a motion to dismiss for failure to state a claim under

11  Rule 12(b)(6).  *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003); Fed. R. Civ. P.

12  8(a)(2).  For a complaint to sufficiently state a claim, its "[f]actual allegations must be

13  enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v.*

14  *Twombly*, 550 U.S. 544, 555 (2007).  While specific facts are not necessary so long as

15  the complaint gives the defendant fair notice of the claim and the grounds upon which

16  the claim rests, a complaint must nevertheless "contain sufficient factual matter,

17  accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v.*

18  *Iqbal*, 556 U.S. 662, 678 (2009).

19         *Iqbal*'s plausibility standard "asks for more than a sheer possibility that a

20  defendant has acted unlawfully," but does not go so far as to impose a "probability

21  requirement."  *Id.*  Rule 8 demands more than a complaint that is merely consistent

22  with a defendant's liability—labels and conclusions, or formulaic recitals of the

23  elements of a cause of action do not suffice.  *Id.*  Instead, the complaint must allege

24  sufficient underlying facts to provide fair notice and enable the defendant to defend

25  itself effectively.  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).   The

26  determination whether a complaint satisfies the plausibility standard is a "context-

27  specific task that requires the reviewing court to draw on its judicial experience and

28  common sense."  *Iqbal*, 556 U.S. at 679.

1    When considering a Rule 12(b)(6) motion, a court is generally limited to the
2    pleadings and must construe "[a]ll factual allegations set forth in the complaint . . . as
3    true and . . . in the light most favorable to [the plaintiff]."  *Lee v. City of L.A.*, 250 F.3d
4    668, 688 (9th Cir. 2001).  Conclusory allegations, unwarranted deductions of fact, and
5    unreasonable inferences need not be blindly accepted as true by the court.  *Sprewell v.*
6    *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  Yet, a complaint should be
7    dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts"
8    supporting plaintiff's claim for relief.  *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir.
9    1999).

## III.    DISCUSSION

10
11    Aguilar asserts claims for wrongful death, negligence, assault and battery,
12    violation of the Tom Bane Civil Rights Act, and violation of 42 U.S.C. § 1983 against
13    all Defendants.

**A.    Wrongful Death**
14
15    Officers Scott, Tait, and Dahlia move to dismiss Aguilar's wrongful-death
16    claim on the grounds that the FAC lacks the factual specificity to establish that their
17    actions proximately caused Coronel's death.  Specifically, Scott, Tait, and Dahlia
18    argue that because they did not fire the shots that killed Coronel, they should not be
19    held liable for wrongful death.  (Scott Mot. 5; Tait Mot. 5; Dahlia Mot. 4–5.)

20    Wrongful death is a statutory "cause of action for the death of a person caused
21    by the wrongful act or neglect of another."  Cal. Civ. Proc. Code § 377.60.  Scott,
22    Tait, and Dahlia argue that they are not responsible for Coronel's death because they
23    did not use deadly force, and the force they did use was reasonable.  This argument
24    misses the gravamen of Aguilar's claim.  Aguilar alleges Coronel's death was the
25    result of the officers' negligent, reckless, and wrongful actions not only during the
26    actual shooting, but throughout the entire confrontation with Coronel.  (FAC ¶¶ 13,
27    24–25.)  Nevertheless, Aguilar's claim falls within an uncertain area of the law.
28    / / /

Although police officers in California have a duty to use reasonable care in employing deadly force, *Grudt v. City of L.A.*, 2 Cal.3d 575, 587–88 (1970), it's unclear whether this duty also applies to tactics *preceding* the use of deadly force, particularly when conducting a welfare check on a suicidal person.  In a case currently pending before the Ninth Circuit the Ninth Circuit recently certified the following question to California Supreme Court:  "Whether under California negligence law, sheriff's deputies owe a duty of care to a suicidal person when preparing, approaching, and performing a welfare check on him."  *Hayes v. County of San Diego*, 658 F.3d 867, 869 (9th Cir. 2011).  Upon granting the Ninth Circuit's request, the California Supreme Court restated the question as follows: "Whether under California negligence law, liability can arise from tactical conduct and decisions employed by law enforcement preceding the use of deadly force."  California Courts, Appellate Courts Case Information, *Hayes v. Cnty. of San Diego*, Case No. S193997, *available at* http://www.appellatecases.courtinfo.ca.gov/search/case/dockets.cfm?dist=0&doc_id=1982541&doc_no=S193997 (last visited Aug. 5, 2013).  This question is currently pending before the California Supreme Court, which is expected to issue a decision soon.  *Id.*

The California Supreme Court's upcoming decision will necessarily apply to this case.  Although Officers Scott, Tait, and Dahlia did not fire the lethal bullets, they each participated in the tactical conduct and decisions leading up to the shooting.  Depending on the California Supreme Court's ruling, the officers' pre-shooting conduct might form the basis of liability for Coronel's wrongful death.  The Court therefore deems it appropriate to allow Aguilar's wrongful-death claim to stand for the time being.  Defendants Scott, Tait, and Dahlia's Motions to Dismiss Plaintiff's wrongful-death claim are therefore **DENIED**.

**B.    Negligence**

Officer Scott moves to dismiss Aguilar's negligence claim on the grounds that it is vague and conclusory.  (Scott Mot. 6–7.)

Aguilar has pled that each of the officers, including Officer Scott, did not use reasonable care in their response to Coronel's distress call.  (FAC ¶¶ 29–30.)  In support, Aguilar cites the officers' refusal to allow family members to talk to Coronel, their pursuit, and their decision to corner Coronel.  (*Id.* ¶ 29.)  Aguilar's FAC supports the reasonable inference that Officer Scott participated in or directed these actions.  But these actions occurred prior to the actual shooting.  As discussed above, whether officers can be held liable for conduct preceding their use of deadly force is a question pending before the California Supreme Court.  Therefore, for the reasons discussed above, the Court deems it appropriate to allow Aguilar's negligence claim to stand for the time being.  Defendant Scott's Motion to Dismiss Plaintiff's negligence claim is therefore **DENIED**.

## C.  Assault and Battery

Officer Scott argues Aguilar's Complaint does not plead sufficient facts to show Scott assaulted or battered Coronel.  (Scott Mot. 8.)  Specifically, Scott argues the Complaint fails to allege that Scott used or attempted to use any force at all.  (*Id.* at 9.)  Scott also argues that even if he had attempted or threatened to use force, such action would have been reasonable.  (*Id.* at 8.)

Under California law, "[a]n assault is an incipient or inchoate battery; a battery is a consummated assault."  *People v. Colantuono*, 7 Cal. 4th 206, 216 (1994).  Here, the FAC clearly illustrates the attempted and actual uses of force against Coronel: Officer Tait fired his Taser, Officer Dahlia fired her beanbag shotgun, and Officers Bedetti and Bolar fired their sidearms.  But the FAC is not clear how Officer Scott used or attempted to use force against Coronel.

Nevertheless, Aguilar argues in her Opposition that Scott can be liable for assault and battery because his actions constituted "aiding and abetting."  (Opp'n to Scott's Mot. 14.)  All "who aid, abet, counsel or encourage [a principal actor or actual assailant] are equally liable with him to the injured party."  *Turner v. Whittel*, 2 Cal.

/ / /

App. 2d 585, 589 (1934).  But despite the contentions in her Opposition, Aguilar's FAC itself does not allege this purported "aiding and abetting" claim.  The Court therefore **DISMISSES** Aguilar's assault-and-battery claim as alleged against Scott, but does so without prejudice.

**D.    Tom Bane Civil Rights Act**

Officer Scott moves to dismiss Aguilar's claim for violation of the Tom Bane Civil Rights Act.  The Bane Act is an anti-hate-crime statute providing that "a person may bring a cause of action 'in his own name and on his or her own behalf' against anyone who 'interferes by threats, intimidation or coercion, with the exercise or enjoyment' of any constitutional or statutory right."  *Bay Area Rapid Transit Dist. v. Superior Court*, 38 Cal. App. 4th 141, 144 (1995) (citing Cal. Civ. Code § 52.1).  Aguilar's Bane Act claim alleges Defendants interfered with Coronel's rights and thereby deprived Plaintiff of "love, society, comfort, companionship, affection, service and support of decedent in an amount to be proven at trial."  (FAC ¶ 43.)

Scott argues, as the City did in its earlier motion to dismiss, that Aguilar's Bane Act claim must necessarily fail because it does not specify how Scott used improper means (threats, intimidation, or coercion) to interfere with Coronel's rights.  The Court need not reach the merits of Scott's argument because Aguilar's Bane Act claim is already ruinously flawed.

The court in *Bay Area Rapid Transit* refused to recognize derivative Bane Act liability where parents sued police officers who killed their son.  *Bay Area Rapid Transit*, 38 Cal. App. 4th at 144.  The court held "[t]he Bane Act is simply not a wrongful death provision.  It clearly provides for a *personal* cause of action for the victim of a hate crime."  *Id.*  As such, the Bane Act provides no derivative cause of action for parents of a hate-crime victim.  *Id.*

Some courts, however, have made distinctions between a derivative wrongful-death cause of action and a survival cause of action.  Unlike a derivative wrongful-death claim, a survival claim is one that belonged to the decedent before death and

survives by statute in the decedent's personal representative. *Medrano v. Kern Cnty. Sheriff's Officer*, No. 1:12-CV-00564AWIJLT, 2013 WL 433119, at *4 (E.D. Cal., Feb. 1, 2013) (citations omitted) (ruling decedent's parents' Bane Act claim to be survival cause of action where it was brought on decedent's behalf, but finding parents lack standing to bring the claim on their own behalf); *see also Dela Torre v. City of Salinas*, No. C-09-00626RMW, 2010 WL 3743762, at *6–7 (N.D. Cal., Sept. 17, 2010) (Bane Act claim is a survival cause of action where asserted in decedent's name and on her behalf).

Here, Aguilar seeks damages under the Bane Act only for loss of companionship and support of her son. Thus, even though Aguilar alleges Defendants violated Coronel's constitutional and statutory rights, she does not bring the claim in his name or on his behalf; instead, she seeks damages for *herself*. As pleaded, Aguilar's claim is therefore in the nature of a wrongful-death claim, and consequently must be dismissed. Scott's Motion to Dismiss Aguilar's Bane Act claim is **GRANTED**. Further, while no party—including the County—specifically raised this issue here or in the earlier motion to dismiss, the Court's reasoning applies to the entire claim as it is alleged against all Defendants. Aguilar's Bane Act claim is therefore **DISMISSED WITHOUT PREJUDICE** in its entirety.

**E.    § 1983 Liability**

The FAC alleges that each Defendant violated Aguilar and Coronel's Fourth, Eighth, and Fourteenth Amendment rights, in violation of 42 U.S.C. § 1983. (FAC ¶¶ 47–51.) Defendants Officers Scott and Tait move to dismiss those claims, but focus entirely on "unreasonable force"—words that do not even appear in the FAC. (Scott Mot. 11–13; Tait Mot. 5–8.) Not only has Aguilar pled sufficient facts to demonstrate Defendants used excessive force, *Graham v. Connor*, 490 U.S. 386 (1989), she has also established that Officers Scott and Tait were integral participants in the violation of Coronel's constitutional rights. *Boyd v. Benton Cnty.*, 374 F.3d 773, 780 (9th Cir. 2004).

To state a § 1983 claim, a plaintiff must allege (1) the violation of a rights secured by the Constitution and laws of the United States and (2) the person who committed the alleged deprivation was acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  Both moving officers concede that the FAC establishes that they were acting under color of state law, so the Court turns to the alleged constitutional violation.  (Scott Mot. 12, Tait Mot. 6.)

A state actor deprives another of a constitutional right, "within the meaning of §1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (internal quotation marks and citations omitted).  Mere bystanders will not be found to have caused injury, but actors who were "integral participants" in the constitutional violation can be liable under § 1983.  *Hopkins v. Bonvicino*, 573 F.3d 752, 770 (9th Cir. 2009); *see Boyd*, 374 F.3d at 780.

An officer's action does not need to rise to the level of a constitutional violation to constitute integral participation.  *Boyd*, 374 F.3d at 780.  Instead, it requires "fundamental involvement" in the conduct that allegedly caused the violation.  *Id.* Individual officers are fundamentally involved in the conduct of another officer when they "provide some affirmative physical support at the scene of the alleged violation and when they are aware of the plan to commit the alleged violation or have reason to know of such a plan, but do not object." *Monteilh v. Cnty. of L.A.*, 820 F. Supp. 2d 1081, 1089 (C.D. Cal. 2011).

Officers Scott and Tait assert that the FAC lacks the factual specificity required to establish that they individually participated in any constitutional violation.  (Scott Mot. 13, Tait Mot. 8.)  The FAC alleges that "the police" had weapons drawn and demanded Coronel drop his knife; "Defendants" targeted him with the laser sight that caused him to retreat to the courtyard, and then cornered and closed in around him. (FAC ¶¶ 10–11.)  All five officers were tightly positioned, facing him.  (FAC ¶ 11.)

Officer Tait attempted to hit Coronel with a Taser and Officer Dahlia fired multiple rounds with a bean-bag shotgun. (*Id.*) The FAC does not allege that Officer Scott objected. (*Id.*) When Coronel supposedly lunged at the line of officers, Officers Bedetti and Bolar killed him by shooting him 15 times in the front and back. (*Id.*) Neither of the officers bringing the instant motion objected. (*Id.*)

Although neither Officer Scott nor Tait fired the shots that killed Coronel, the FAC sufficiently alleges that both were "fundamentally involved" in the violation by providing affirmative physical support at the scene. *Monteilh*, 820 F. Supp. 2d at 1089. First, the officers were not only armed, but had their weapons drawn. (FAC ¶ 10.) They did not "simply remain outside," *Jones v. Williams*, 297 F.3d 930, 939 (9th Cir. 2002), but actively followed, cornered, and closed in around Coronel. (FAC ¶¶ 10–11.); *Boyd*, 374 F.3d at 780 ("[I]n *James ex rel. James v. Sadler*, 909 F.2d 834 (5th Cir.1990), cited with approval by *Chuman*, [76 F.3d 292 (9th Cir. 1996),] the court held that officers who provided armed backup during an unconstitutional search were 'integral' to that search, and were therefore participants rather than mere bystanders.") Officer Tait even went so far as attempting to hit him with a Taser. (FAC ¶ 11.); *see Castaneda v. Douglas Cnty. Sherriff's Investigator Rory Planeta*, No. 1:12-CV-00428-LJO-SKO, 2007 WL 160816, at *7 (D. Nev. Jan. 17, 2007). They were potentially integral participants, not simple bystanders.

The moving officers rely heavily on the fact that they are not individually or specifically alleged to have "wronged" Coronel. (Tait Mot. 8, Scott Mot. 12.) Though the FAC does not always name which officer committed each specific act during the incident—instead often referring to all of officers as "Defendants" or the "police"—such specificity is not required at this stage. *Sanchez v. City of Fresno*, No. 1:12-CV-00428-LJO-SKO, 2013 WL 2100560, at *7 (E.D. Cal. May, 14 2013); *see Starr*, 652 F.3d at 1217; *Gallagher v. City of Winlock*, Wash., 287 F. App'x 568, 577 (9th Cir. 2008) ("Without deposing the defendants, the plaintiffs have not had a fair opportunity to sort out the roles of the various officers.").

For the foregoing reasons, Officers Scott and Tait's Motions to Dismiss the §1983 claim is **DENIED**.

## IV.   CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendant Scott's motion to dismiss Aguilar's claim for assault and battery, which is dismissed with leave to amend as to Defendant Scott only.   The Court also **GRANTS** Scott's motion as to Aguilar's Bane Act claim, which is dismissed with leave to amend against all Defendants (including the City of South Gate), notwithstanding any Defendant's failure to move to dismiss that claim.   The Court **DENIES** Defendant Scott, Tait, and Dahlia's motions to dismiss on all other grounds.

Aguilar may file a Second Amended Complaint no later than August 19, 2013, to amend her Bane Act claim against all defendants and to amend her assault-and-battery claim against Defendant Scott.   Aguilar is not permitted leave to amend any other claim.

In light of the Court's ruling on these motions to dismiss and the now-altered state of the pleadings, Defendants' pending motion for summary judgment (ECF No. 56) is hereby **DENIED WITHOUT PREJUDICE**.   Defendants may renew their motion any time before the dispositive-motion cut-off date established below.

Finally, because the Court grants Aguilar leave to amend while discovery is ongoing, the Court amends the case-management schedule in this matter as follows:

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

| 01/28/14 | Trial at 9:00 a.m. |
|----------|-------------------|
| 01/23/14 | File Final Trial Exhibit Stipulation |
| 01/17/14 | Hearing on Motions in Limine at 2:30 p.m. |
| 01/06/14 | Final Pretrial Conference at 2:30 p.m.<br>Motions in Limine to be Filed<br>Proposed Voir Dire Questions & Agreed-to Statement of Case |
| 12/30/13 | Lodge Pretrial Conference Order & Pretrial Exhibit Stipulation<br>File Trial briefs<br>File Contentions of Fact & Law<br>Exhibit & Witness Lists<br>File Status Report Regarding Settlement<br>File Agreed Upon Set of Instructions & Verdict Forms<br>File Joint Statement Regarding Disputed Instructions, Verdicts, etc… |
| 12/09/13 | Last Day for Hearing Motions |
| 11/04/13 | Last Date to Conduct *Mandatory* Settlement Conference |
| 10/28/13 | Discovery Cut-Off for *All* Discovery |
| 06/24/13 | Last Date to Amend Pleadings or Add Parties (Expired) |

**IT IS SO ORDERED.**

August 7, 2013

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**